23-5-0-6-4. Your Honor, again Neil Van Dalsom, this time for Appellant Derek Flaming. I'd like to address two issues. There are multiple issues raised. I think that our time might be most useful discussing first the limits on cross-examination and then also the jurisdictional issue about the government's failure to prove the defendant is guilty. I'd like to start with the cross-examination issue. And I start there because it is a recurring theme post-McGirt that we have more and more cases that involve allegations with child victims. And it has been my firsthand experience that in these cases, everyone is uncomfortable. No defense attorney wants to cross-examine a child who claims to be a victim. Judges do not want anyone to be mean to a child victim. And the result is defendants who are charged with these sorts of allegations involving a child victim do not get the same cross-examination of the witness as normally happens in a trial. And in this case, we had a minor take the stand to testify in support of Count 3 and Count 5. The entirety of Count 3 and Count 5 really was the minor's testimony. There was some other evidence on Count 5, but Count 3, the fact that it happened, was entirely established by the minor's testimony. The minor's first explanation of this physical assault that she ultimately testifies happened was, I don't remember. Which was then followed by a leading question that was objected to and the objection was overruled. And then she very briefly explains that there was an incident that happened sometime in the fall of 2016 in Korea in which Mr. Flaming got drunk, tried to choke her, and tried to put his penis in her mouth. Previously, this same witness had been interviewed twice by Korean law enforcement. And she had indicated to them that Mr. Flaming had assaulted her, but that it had happened in Colorado before. Defense counsel then attempts to use these two recordings, which don't play, but ultimately then tries to use a transcript. And the government objects that this is not impeaching. The transcript indicates that the minor stated that there was one physical assault and it happened in Colorado, not in Korea. But she didn't state that, right? That's the inference to be drawn from the colloquy, right? There was no audible response. There is no audible response, but it's not just an inference to be drawn because the answer was stated verbally by the investigator. Just that one time. Question mark. And that happened just once. The court ruled that's not impeaching. It is impeaching. It indicates that this witness told law enforcement officers that count three did not happen at all. So it should have been allowed for impeachment. So what is the statement? I mean, my understanding of the evidentiary ruling here is it was the absence of a foundational statement, the inconsistency. What is it here? It is her indication to these law enforcement officers that there was one assault and it happened in Colorado. But the actual statement you're relying on is the question of the... It's not her statement. It is what is indicated by the transcript, which is that she made a nonverbal statement. And a statement doesn't have to be words under the evidence code. So it's the no audible response. So just so that I understand your argument, it's that the statement here we should understand as the entirety of the exchange. From the context, from the transcript, a jury could certainly infer from this that her response was there was one time and it was in Colorado. The other way that this statement was attempted to be used was to refresh her recollection, which is not the same as direct impeachment. And that was attempted explicitly. The defense counsel said, I'm trying to refresh her recollection. He asked her, would it refresh your recollection? And she said, yes. Then the district court objected to or said, don't do that. We've already covered this. It's not impeaching. Move on. So this was, this transcript, there was a legitimate attempt to use it in two different ways. One for impeachment and one to refresh recollection. Neither one of those was allowed. This is both of those confrontation clause violations. I believe they both are confrontation clause violations. And I argued this in my brief, primarily with a heading that we're arguing constitutional error. I also pointed out this violated the rules of evidence. The government responded to the impeachment argument, didn't really have anything to say about the refreshing recollection argument. So we have some confusion in this record about what the standard of review is. Should this be reviewed as a constitutional issue? Should this be reviewed as an evidentiary issue? What I would suggest is that if it's reviewed as an evidentiary issue, that puts a burden on the defendant to show that it's a harmful error. That's the difference. It is a harmful error. When you've got a trial and the entire... Well, it also, you also have the burden to show an abuse of discretion, right? It's an abuse of discretion when this statement can be interpreted by a jury easily as impeaching to say, we're not going to let the jury decide that. I'm going to decide it's not impeaching and you can't ask any questions. And when you have a witness who says, yeah, I can't remember what I told him, but it would refresh my recollection, say, well, you can't refresh your recollection. So didn't the jury already have the neighbor's statement? The victim said that the defendant had engaged in inappropriate touching only in Colorado. Her direct testimony was to the contrary, and then she was impeached that, no, well, didn't you tell the officers that she told you that it happened in Colorado? And she then said, yeah, I did tell him that, if that's what it says. Had this been used for refreshing recollection, it could have been substantive evidence out of the mouth of the alleged victim. So it has a different status. Also, it is much more powerful evidence coming from the mouth of the victim, who's the only one who really knows. She has superior knowledge. And so ultimately what happens here is the jury is not given information that any normal jury, I think, would want to know to evaluate this case. Do you have any cases that you could point us to that concern a similar factual scenario for purposes of the statement, where there isn't a clear statement that's just an assertion by the victim, but where the court is trying to piece together components of the transcript to discern it? I do not. I would say that under the rules of evidence, it is clear that statements do not have to be affirmative verbal answers. So there is nothing in the evidence code that gives some special treatment to verbal statements as opposed to nonverbal ones. What about relying on the statement of the questioner? The statement of the questioner here is a statement that you just told me this. I mean, that's in substance. It is. That's not what the transcript says, but that's what you're saying. That is the natural reading of the testimony, right? That is certainly an inference that a reasonable jury could draw. And probably would. Just common sense reading this, you can read it and say, that's what was going on. He was doing active listening and repeating back to her what she had told him to get more information. That's all that was going on. It's obvious that that's what's going on. I would point you to United States v. Dennett Claw, which I think is not cited. That is 96F 3rd 454. It's in the same ballpark, and this court states that statements need not be diametrically opposed to be inconsistent. So we have to use a little common sense when applying these standards, I think. And again, this is not, was he wearing a blue shirt or a yellow shirt? This is not a minor detail. This is, did the conduct that Mr. Fleming stands convicted of even happen? Briefly, Your Honor, on the issue of jurisdiction. This issue is analogous to Indian and non-Indian status. The government acknowledges that it has a duty to prove, or a burden to prove beyond a reasonable doubt, that Mr. Fleming is not Korean in order to invoke media jurisdiction. All that the government presented is evidence that he is a U.S. citizen. There was nothing presented on the issue of whether he is not also a dual citizen with Korea. So are you saying that the government had an obligation to satisfy this element with affirmative evidence, that the evidence before, that the evidence on jurisdiction here is insufficient, or that the government has, as a matter of law, some sort of burden to put on affirmative evidence on this element? They have to present evidence which, under the normal standard for reviewing the sufficiency of the evidence, satisfies their burden. Well, let me just ask you whether this question of whether the defendant was a foreign national, just looking at the statute raises a question to me whether that's an element of the offense or an affirmative defense. Because the definition for accompanying the armed forces outside the United States lists a number of things. And then at the very end it says, not a national of or ordinary resident in the host nation. Why shouldn't the initial burden be on the defendant on that issue? For the same reasons that in Prentiss this court said that it is a factual element that has to be proven by the government. Well, this isn't Prentiss and this isn't Indian status. This is this statute. And this statute is different from 1152 and 1153. It has its language. And so, do you have any authority holding that this is an element of the offense? Do you have a case that says that? That was treated, essentially, as an element in the case that the parties cite in their briefs that arises out of Germany. Well, is it a Supreme Court case? Is it a Tenth Circuit case? It is not. Because you're on plain error at this point on this issue, right? Correct. All right. And to show that the error is plain, you need a Supreme Court or a Tenth Circuit case on this issue, don't you? In this instance, the government argued in the district court that it was its burden to prove that. The jury instructions told the jury that it was their burden to prove that. Under established Tenth Circuit precedent, that is analogous, it was their burden to prove that. I don't think in the government's brief they've argued that they didn't have the burden to prove it. So could we rely on the statute for plainness here? Yes. Your time has expired. Do you have anything you'd like to sum up? I always hesitate to ask that because that goes for another two minutes, but go ahead. Your Honor, I think I'll stand on what I've said before. I think that however you approach the evidentiary question, this is a harmful error in this case. And I think that the Prentiss and Simpkins decisions really are not under the same statute, but so analogous as to guide this court in an analysis of the jurisdiction question. Thank you, counsel. Thank you. Thank you. Good morning, Your Honors, and may it please the court. Michael Rotker from the Department of Justice on behalf of the United States. With the court's permission, I'd like to actually address the two issues in reverse order. Let me start with the jurisdictional issue where the court left off, and then I'll turn to the cross-examination question. Judge Matson, you raised a threshold question about whether the statute should be construed as an element or an affirmative defense. I think it is an open question how to read the statute, but I do agree with my opponent that for purposes of this case, the government has assumed that it is an element. So it's an open legal question, and we would potentially reserve the right to argue otherwise in another case. But for purposes of this case, we have assumed the burden. We are treating it as an element. Everything that my opponent said about how we litigated the issue below is correct. So the jury was instructed, and we fully accept the burden of proof, and we believe that we met that burden of proof here. As Your Honor also pointed out, this is on plain error review, but we think the evidence was sufficient even under preserved error review. The main point that I want to address is the analogy that my opposing counsel has made to the Indian status cases. And there is a fundamental difference, which I think Your Honor Judge Matson was hinting at, between the Indian status cases and the Meejah situation that we have here. The principle that opposing counsel is relying on from the Prentiss harmless error, there are a number of iterations of the Prentiss decision, I think this is the third one, the harmless error one, is that merely proving that a defendant was not a member of a particular Pueblo or tribe is not sufficient to prove he's a non-Indian. The reason that's true is because he could be a member of another tribe, or another tribe, or another tribe. So the government has a much broader burden. Here, the burden is simply to prove he's not a national of the host nation. So it's a binary situation. We don't have to negate the possibility that he is a member of every other, that he's a dual citizen of any other country. It's just the host nation. And that's why I don't believe that the Indian case law analogy holds sway here. And I would urge the court to not incorporate those principles to the context of Meejah. If the court has no further questions for me on the jurisdictional point, then I'd like to move to court. It would be helpful, I think, if we could run through the evidence that you suggest satisfies your burden. Yes, absolutely. I'm sorry, I should have done that, Your Honors. The main evidence was the testimony from one of the investigating agents, who testified that during an interview, Flaming stated that he was a U.S. citizen. And it's important not just to see what Flaming stated, but it's also what he didn't state. He did not claim that he was a dual citizen. And that's important. And I think it's also important to note that while it is our burden, there was no cross-examination of the government agent on this particular point, on the question of his citizenship or his nationality. In fact, really more broadly, the whole issue of dual citizenship, you can scour the entire record from the indictment to the verdict. There's no mention of it below. There was no cross-examination of the government's witnesses on this point. There was no request for a jury instruction. There was no mention of it in closing argument. So this is really sort of an afterthought that came up on appeal. And the reason I say that is not to dilute our burden of proof, but because I think that dovetails with the principle that in gauging whether the evidence is sufficient, the government need not disprove every conceivable hypothesis that's consistent with innocence. And that's really what this is. It's a speculative hypothesis with no grounding. Well, it's not every conceivable. I mean, it's right there in the statute. Not a national or ordinarily resident in the host nation. So it's right there. And you make the point about it being hard to prove a negative. And I realize we're in hindsight in 2020 territory right now. But it wouldn't have been hard for the investigators just to ask the defendant whether he was a South Korean national. And there's the only indication that we have. Look, we're on sufficiency review, so we're limited by what was said in the record. There was no questions that were posed. I'm not denying that perhaps more could have been done, more could have been asked. But the only question we have to deal with on sufficiency is whether what we have in the record is sufficient. I do think it's a reasonable inference when someone says they're a U.S. citizen, but when the jury found that the evidence was sufficient, the district court blessed that finding. So we have a set of people who have concluded that the inference is a rational one for the jury to draw. Well, rational, we should leave out the rest of the standard. I mean, any rational jury, but still beyond a reasonable doubt. Yes, that's correct. But it's also, it's not just the evidence, it's the reasonable inferences to be drawn from the evidence, all viewed in the light most favorable to the government or the jury's verdict, whether a rational jury could have found. So we have the statement that he was a U.S. citizen, which I think is sufficient. We also have this testimony that the South Korean police were notified of the allegations against Mr. Flaming, and they declined to prosecute. I think that's an additional data point that bolsters the inference. I want to say something, though, about... Well, if the Americans are taking care of the situation, why would they do anything? Because the whole premise of Mijia, I mean, the whole, one of the whole reasons why Mijia was enacted was because foreign national, foreign host nations were not prosecuting American citizens. So the fact that the South Korean police didn't prosecute, at least is consistent with the idea that he is not a dual citizen. Now, I want to just point out that in his reply brief, I'm focusing specifically on page two, footnote one, he offers an alternative explanation for why the South Korean police didn't investigate. But as I said, Your Honor, the standard of review requires that you view the evidence most favorable to the government. But more to the point, the alternative theory that he's put forward, he freely concedes in the footnote, is admittedly not supported by anything in the record. It's a speculative inference, and that, Judge Mathison, is kind of why I'm saying that that's sort of the aesthetic that I'm trying to portray to the court, that this whole idea about dual citizenship was never raised below. It's something that's raised on appeal. And engaging whether the evidence is sufficient, we don't have to disprove every conceivable hypothesis. I'm not saying we don't have to prove that he wasn't a national, but this dual citizenship hypothesis, I think, fits comfortably within that idea that we don't have to affirmatively negate it. If the court has no further questions. I just have one other. Yes, please. You quote from the Fifth Circuit that the evidence must be obviously insufficient. We've never used that expression, have we? No. This court's precedents have never squarely grappled with sort of the intersection between sufficiency claims and plain error review. On the one hand, the court has never adopted the Fifth Circuit standard, but it's also never rejected it. And the court has left open that there is some daylight between preserved error of sufficiency review and unpreserved sufficiency error review. And that makes sense, right? Because plain error applies to all errors. Sufficiency claims are not exempted. There's no carve-out. They're not entitled to special treatment. So when you have, and it's admitted here, when you have an unpreserved sufficiency claim, it's appropriate to apply plain error. And the reason I cite the Fifth Circuit cases, Your Honors, is because I think that they properly explain how to analyze a sufficiency claim through the lens of plain error, and that's by focusing on that second prong. That's by focusing on the clarity and obviousness requirement. So, for example, one of the cases the defense cites in their reply brief is Simpkins. That's a case where the government conceded there was no evidence. In a no evidence case, the plain error standard would be satisfied. But in a case like this, there is at least some evidence. You can't say the record is devoid of evidence. And so if it's a close question, that's where I think plain error carries that additional weight in a sufficiency context. Do you need to get to step two for your argument? I thought you were just arguing there's no error. I am. I am arguing no error. But what I'm saying is Your Honor was asking about how plain error applies. And I think step two does carry some weight. So our argument in sum would be there's no error, but at a minimum there was no, certainly not clearly or obviously insufficient evidence in this case. Let me turn, if I may, with the Court's permission and absent any other questions, to the cross-examination point. I do agree with my opponent that there is a little bit of confusion about the sort of procedural posture. So let me start by doing my best to try to clarify at least the government's view. In the district court, this was litigated as an evidentiary claim. And so on appeal, it's been briefed as both an evidentiary claim and a Sixth Amendment claim. If we view this as an evidentiary claim, it is, as Judge Matheson, as you pointed out, subject to review for under the deferential abuse of discretion standard. If it's a Sixth Amendment claim, because it was not raised below, you would have to view it through the lens of plain error. We have principally focused, again, on the evidentiary claim. And let me begin by addressing that. The colloquy that is the centerpiece of the argument is Volume 3 of the Joint Appendix, or the excerpts, page 38 and 39. The problem is that it is inherently ambiguous. There is no statement from the victim. And that's what the district court found. The first question is, it says, what about did he try putting his private in your mouth? And the victim says, yeah. Then the next question, yeah, how many times did he do that? Just that one time. Response, no audible response. The questioner, just that one time, question mark, and that was here in Korea or in Colorado, question mark. Answer, in Colorado. The problem is, as the district court found, all she's doing there is confirming that there was abuse in Colorado. She's not denying that there was, she's not saying that she previously said there was no abuse in South Korea. And that's the alleged impeachment. I don't think the no audible response is completely ambiguous what was meant. And the questioner asked a compound question. It says, just that one time, and that was here in Korea or in Colorado. The witness only answered the second part of the question. She said, in Colorado. She didn't say only in Colorado. She said, in Colorado. And what the district court said is, that's not impeaching. Because the impeachment was to show that she had allegedly denied abuse in South Korea. Saying that there was abuse in Colorado is not the same as saying there was no abuse in South Korea. Now, my opposing counsel has said on several occasions in response to questions from the court, that it's possible to read it. A jury could have inferred. The district court could have found. But it's abuse of discretion standard. Just because the district court perhaps could have found, I'm not conceding that it could have, but just because the district court perhaps could have found that the court abused its discretion in declining to interpret it that way. That's what the abuse of discretion standard is for. We entrust district courts with broad discretion to rule on these evidentiary matters, including matters of foundation. The district court is best poised to know. The court read the transcript. The court was there live. The court saw it, and the court, whatever you can say about the ruling, it's well within the court's, the heartland of the court's exercise of its discretion. And so we don't think that there was any abuse of discretion there. On the Sixth Amendment issue again, just very briefly, it would be reviewed for plain error. The right of cross-examination is certainly implicit. It's part of the Sixth Amendment right of confrontation. But it doesn't guarantee cross-examination that's going to be effective. It guarantees the procedural opportunity. And here, the district court afforded the defense numerous opportunities to try to impeach the witness. The Sixth Amendment doesn't excuse the defense from having to lay a foundation. It doesn't exempt them from having to do so. The defense had the opportunity. They just weren't able to make hay out of it as they would have liked. And I think under those circumstances, it's not a Sixth Amendment violation, certainly not on plain error review. I believe that that's all I have to say in response to those two issues. I'm happy to address any of the other issues the court has or any questions the court has. But if not, we would submit on our briefs and we would urge the court to affirm the district court's judgment. Thank you, Your Honor. I don't recall any rebuttal at this time. Well, thank you, counsel, for the arguments this morning. The case will be submitted. Counsel are excused.